## Case No. 16,188.

### UNITED STATES v. ROGERS et al.

[10 Int. Rev. Rec. 206.]

District Court, E. D. New York. Dec., 1869.

INTERNAL REVENUE—WHISKEY TAX.

---

## Case No. 16,189.

### UNITED STATES v. ROGERS et al.

[3 Sumn. 342.][1]

Circuit Court, D Rhode Island. June Term, 1838.

WHALE FISHERIES—REGISTERED VESSEL—REVOLT OF SEAMEN.

1. By the act of 1793, c. 52 [1 Story's Laws, 285; 1 Stat. 305, c. 8], no registered ship or vessel can, while she remains registered, engage in the whale fisheries; but she must surrender her register, and be enrolled and licensed for the fisheries.

2. The act of 1835, c. 40 [4 Stat. 775], provides that "if any one or more of the crew of an American ship or vessel, on the high seas,

---

[2] Rogers was never tried, having been afterwards drowned in the Arkansas river, in attempting to make his escape.

[1] [Reported by Charles Sumner, Esq.]

&c., shall endeavor to make a revolt," &c., he and they shall, on conviction, be punished as provided in the act. Held, that a ship, engaged in a whaling voyage, without having surrendered her register, or taking out an enrollment and license, pursuant to the act of 1793 (chapter 52), was not an American ship, within the purview of the act of 1835 (chapter 40), and that an indictment would not hold, under this act, against the crew, for an endeavor to make a revolt.

[Cited in U. S. v. Almeida, Case No. 14,433.]
[Cited in People v. Tyler, 7 Mich. 225.]

Indictment against the defendants [William Rogers and others] for an endeavor to commit a revolt, on the 10th of May, 1838, on board of the brig Troy, belonging to Bristol (Rhode Island), alleged to be a registered ship, owned by certain citizens of the United States, named in the indictment, and the defendants being seamen in and on board thereof, against the act of March 3, 1835, c. 40 [4 Stat. 775]. Plea, not guilty.

At the trial it was admitted by R. W. Greene, the district attorney, that the brig was, at the time when the supposed offence was committed (May, 1838), engaged in a whaling voyage, and her crew were, by the shipping articles, in the same year shipped for a whaling voyage. The ship's register was dated in 1833, and the voyage was undertaken without any surrender of the register, or taking out an enrollment and license pursuant to the act of 18th February, 1793, c. 52 [1 Story's Laws 285; 1 Stat. 305, c. 8], for enrolling and licensing vessels employed in the coasting trade and fisheries.

Upon this statement, which was agreed to be the truth of the case, the court suggested a doubt, whether the offence (if any) was, under the circumstances, within the purview of the statute; and the case was spoken to by—

Mr. Greene, U. S. Dist. Atty.

Randolph and Pearce, for defendants.

Before STORY, Circuit Justice, and SPRAGUE, District Judge.

STORY, Circuit Justice. I am unable to persuade myself, that the present indictment is maintainable, under the circumstances. The act of 1835 (chapter 40) provides that "if any one or more of the crew of an American ship or vessel, on the high seas, &c., shall endeavor to make a revolt," he and they shall, on conviction, be punished as provided in the act. To bring the case within the statute, the voyage, for which the seamen are shipped, must be a lawful one, and they must, at the time, be of the "crew" of an American ship or vessel; and of course there must exist a lawful relation between them and the master. The statute of 1793, c. 52, § 1 [1 Story's Laws 285; 1 Stat. 305, c. 8], enacts, that such ships or vessels as are enrolled and licensed according to the provisions of that act, "and none others shall be deemed ships or vessels of the United States, entitled to the privileges of ships engaged in the coasting trade or fish-

eries;" and the whale fisheries are expressly within the purview of the act, as is abundantly seen in the form of the license prescribed by the fourth section. Now, it seems plain to me, that no registered ship is entitled to carry on the whale fisheries, as an American ship, or is entitled to the privileges of an American ship, under the statute of 1793, c. 52 [8]. The third section declares, that it shall be lawful for the collectors of the several districts, to enroll and license any ship or vessel that may be registered, upon such registry being given up, or to register any ship or vessel, that may be enrolled, upon such enrolment and license being given up. And the sixth section treats every ship or vessel not so enrolled or licensed, and found engaged in the trade, as liable to pay the same fees and tonnage in every port of the United States, as ships or vessels not belonging to a citizen or citizens of the United States; and, under certain circumstances, the ship or vessel and its lading become liable to forfeiture. My opinion, therefore, is, that this ship cannot be deemed an American ship, within the sense of the third section of the statute of 1835 (c. 40), on which this indictment is founded; and the crew are not the crew of such an American ship or vessel as are contemplated by the act. On this ground the indictment would fail upon the facts. Indeed, my impression is, that, upon the manifest intent of the act of 1793, c. 52 [8], no registered ship or vessel can, while she remains registered, engage in the whale fisheries; but she must surrender her register, and be enrolled and licensed for the fisheries. And that if she should be found engaged in such fisheries without such enrolment and license, at least, if she has on board any article of foreign growth and manufacture, or distilled spirits, other than sea stores, she would be forfeited. The main purposes of the act would be utterly frustrated upon any other construction, and the main securities and privileges of the trade be defeated.

The district judge concurred in opinion that the facts did not support the indictment; and thereupon the district attorney entered a nolle prosequi.